UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| SHANNON DAVIS, on behalf of herself and all others similarly situated<br><br>Plaintiff,<br><br>v.<br><br>JARS I, INC.<br>c/o D. SCOTT SCHMIDT<br>1735 WALLER STREET<br>PORTSMOUTH OH 45662<br><br>and<br><br>SCHMIDT FAMILY RESTAURANT GROUP, INC.<br>c/o JUSTIN S. SCHMIDT<br>1735 WALLER STREET<br>PORTSMOUTH, OH 45662<br><br>Defendants. | CASE NO.<br><br>JUDGE<br><br>(JURY TRIAL DEMANDED)<br><br>Rule 216(B) Collective Action<br>Rule 23 Class Action |

**PLAINTIFF'S CLASS AND COLLECTIVE ACTION COMPLAINT**

1. Defendants JARS I, Inc. ("JARS"), and Schmidt Family Restaurant Group, Inc. ("Schmidt") ("Defendants" collectively) have violated the Fair Labor Standards Act's ("FLSA") tip credit and subsequent underpayment of their employees at the federally mandated minimum wage rate and the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), Ohio Revised Code ("O.R.C.") § 4111.01, *et seq*. as detailed herein.

2. Defendants pay their tipped employees, including servers, below the minimum wage rate by taking advantage of the tip-credit provisions of the FLSA and, in Ohio, the OMFWSA. Under the tip-credit provisions, an employer of tipped employees may, under certain

circumstances, pay those employees less than the minimum wage rate by taking a "tip credit" against the employer's minimum wage obligations from the tips received from customers.

3. However, there are strict requirements for an employer to utilize the "tip credit." *See* 29 U.S.C. 203(m). An employer must advise an employee in advance of its use of the tip credit pursuant to the provisions of section 3(m) of the FLSA. *See id*. (the tip credit provision "shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection."). That is, the employer must inform the employee: (1) the amount of the cash wage that is to be paid to the tipped employee; (2) the amount by which the wages of the tipped employee are increased on account of the tip credit; (3) that all tips received by the employee must be retained by the employee except for tips contributed to a valid tip pool; and (4) that the tip credit shall not apply to any employee who does not receive the notice.

4. Further, it is illegal for employers to require tipped employees to give up a portion of their tips to their employer or to ineligible employees, such as management staff. *See Myers v. Copper Cellar Corp*., 192 F.3d 546, 551 (6th Cir. 1999) (for "the work shifts in which salad mixers were included within the tip pool, the pooling scheme was illegal..."); *Portales v. MBA Inv. Co., LLC,* No. 3:13CV00001, 2014 WL 5795206, at *3 (N.D. Ohio Oct. 16, 2014)("When an employer includes a non-customarily tipped employee or another employer in a mandatory tip pool, the pool is invalid under FLSA." (citing 29 U.S.C. § 203)); *Bernal v. Vankar Enter., Inc*., 579 F. Supp. 2d 804, 810 (W.D. Tex. 2008) (employer not permitted to take the FLSA tip credit when it required waiters to pay for shortages and unpaid tabs).

5. Additionally, an employer must pay the minimum statutory hourly rate ($2.13 per hour under the FLSA and 50% of the Ohio minimum wage rate). *See* 29 U.S.C. 203(m).

6. Under the tip-credit provisions of the FLSA, an employer of tipped employees may, under certain circumstances, pay those employees less than the minimum hourly wage and take a

"tip credit" against its minimum wage obligations. But an employer is *not* permitted to take a tip credit against its minimum wage obligations when it (1) requires its tipped employees to perform non-tipped work that is ***unrelated*** to the employees' tipped occupation (i.e., "dual jobs"); **or** (2) when the employer requires its tipped employees to perform non-tipped that is ***related*** to the employees' tipped occupation such as cleaning and setting tables, toasting bread, making coffee and washing dishes or glasses more than "part of the time" or "occasionally". 29 C.F.R. §531.56(e) ("Dual Jobs" regulation); *Osman v. Grube*, Case No. 16-cv-802, (N.D. Ohio, July 7, 2017) citing favorably to *Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 880 (8th Cir. 2011) ("employees who spend 'substantial time' (defined as more than 20 percent) performing related but nontipped duties should be paid at the full minimum wage for that time"); *O'Neal v. Denn-Ohio, LLC*, 2020 WL 210801, at *10 (N.D. Ohio January 14, 2020).

7. Moreover, Courts have uniformly held that Ohio's wage and hour law should be interpreted in accordance with the FLSA. (*See Douglas v. Argo-Tech Corp.*, 113 F.3d 67 n. 2 (6th Cir.1997) (noting that Ohio's wage and hour law "parallels the FLSA" and approaching the Ohio law and the FLSA in a "unitary fashion" is appropriate). *See also Williams v. Bob Evans Rests., LLC,* Case No. 2:18-cv-01353, 2020 U.S. Dist. LEXIS 145852 *37-48 (W.D. Pa. Aug. 13, 2020) (holding that Ohio law recognizes the same tip credit restrictions as does the FLSA.).

8. Defendants' violated the FLSA and OMFWSA in the following respects:

a. **Violation for failure to inform:** Defendants failed to correctly inform Plaintiff of the desire to rely on the tip credit to meet its minimum wage obligations. In fact, Defendants failed to inform Plaintiff of the following: (1) the amount of the cash wage that is to be paid to the tipped employee; (2) the amount by which the wages of the tipped employee are increased on account of the tip credit; (3) that all tips received by the employee must be retained by the employee except for tips contributed to a valid tip pool; and (4) that the tip credit shall not apply to any employee who does not receive the notice.

b. **Violation for performing work unrelated to tipped occupation:** Plaintiff was required to perform improper types, and excessive amounts, of non-tipped work, including, but not limited to, mopping floors, cleaning windows, taking trash out, cleaning ledges, dusting fans, washing trays, and washing appliances.

c. **Violation for performing non-tipped side work in excess of 20% of the time spent working in the week or more than thirty (30) continuous minutes**: Plaintiff was required to perform greater than 20% of her time and more than thirty (30) continuous minutes in performing non-tip producing side work, including, but not limited to, general cleaning tables, rolling silverware, refilling condiments, setting up tables, sweeping floors, and cleaning and stocking the serving line.

9. As a result of these violations, Defendants have lost the ability to use the tip credit and therefore must compensate Plaintiff at the full minimum wage rate, unencumbered by the tip credit, and for all hours worked. In other words, Defendants must account for the difference between the wages paid to Plaintiff and the minimum wage rate.

## SUBJECT MATTER JURISDICTION AND VENUE

10. This court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 as this case is brought under the laws of the United States, specifically the FLSA, 29 U.S.C. § 216(b), *et. seq*. The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to this claim occurred in this district, including many of the wrongs herein alleged.

## PARTIES AND PERSONAL JURISDICTION

12. Plaintiff Shannon Davis is an individual residing in Ohio. Her written consent to this action is attached hereto as Exhibit "A."

13. Plaintiff worked for Defendants in their Gallipolis Buffalo Wild Wings Restaurant from approximately October 2023 through approximately February 2026.

14. Defendants are corporations organized and existing under the laws of the state of Ohio.

15. The FLSA Class Members are all current and former servers and bartenders employed by Defendants for at least one week during the three-year period prior to the filing of this action to the present.

16. The Ohio Class Members are all current and former servers and bartenders employed by Defendants in Ohio for at least one week during the three-year period prior to the filing of this action to the present.

17. The FLSA Class Members and the Ohio Class Members shall be collectively referred to as the "Class Members."

18. Defendant JARS has control over the day-to-day business operations of the Defendants' Buffalo Wild Wings restaurants in Portsmouth, Ironton, and Gallipolis, Ohio. Among other things, Defendant JARS has the authority to hire and fire employees, the authority to direct and supervise the work of employees, the authority to sign on each corporation's checking accounts, including payroll accounts, and the authority to participate in decisions regarding employee compensation and capital expenditures. Defendant JARS controls the "purse strings" of the Buffalo Wild Wings restaurants. It has authority to sign the corporate checks without limitation as to amount; provides funds to purchase goods, as well as pay employees; and has authority to sign on the checking accounts from which Plaintiff was paid.

19. Defendant Schmidt has control over the day-to-day business operations of the Defendants' Buffalo Wild Wings restaurants in Portsmouth, Ironton, and Gallipolis, Ohio. Among other things, Defendant Schmidt has the authority to hire and fire employees, the authority to direct and supervise the work of employees, the authority to sign on each corporation's checking accounts, including payroll accounts, and the authority to participate in decisions regarding employee

compensation and capital expenditures. Defendant Schmidt controls the "purse strings" of the Buffalo Wild Wings Restaurants. It has authority to sign the corporate checks without limitation as to amount; provides funds to purchase goods, as well as pay employees; and has authority to sign on the checking accounts from which Plaintiff was paid.

20. Defendants, at all times relevant to this action, have had sufficient minimum contacts with the State of Ohio to confer personal jurisdiction. Defendants conduct business throughout Ohio. Furthermore, Defendants contracted with and employed Ohio residents, have Ohio customers, market to residents of Ohio, and own property in Ohio.

## COVERAGE

21. At all material times, Defendants have been employers within the meaning of the FLSA. 29 U.S.C. § 203(d).

22. At all material times, Defendants have been an enterprise in commerce or in the production of goods for commerce within the meaning of the FLSA. 29 U.S.C. § 203(s)(1).

23. At all material times, Defendants have enjoyed yearly gross revenue in excess of $500,000.

24. At all material times, Plaintiff was an employee engaged in the commerce or the production of goods for commerce.

25. At all material times, Defendants have operated as a "single enterprise" within the meaning of 29 U.S.C. § 203(r)(1). That is Defendants perform related activities through unified operation and common control for a common business purpose.

26. At all material times, Defendants have been an employer within the meaning of the OMFWSA. O.R.C. § 4111.03(D)(2).

27. At all material times, Plaintiff was an employee of Defendants within the meaning of the OMFWSA, O.R.C. § 4111.03(D)(3).

## FACTS

28. Plaintiff worked as a manager and server for Defendants in Gallipolis, Ohio from approximately through approximately October 2023 through approximately February 2026.

29. Defendants paid Plaintiff, the FLSA Class Members, and the Ohio Class Members at an hourly rate below the Federal and Ohio minimum wage rates and attempted to use the tip credit to meet their minimum wage obligation to Plaintiff.

30. However, Defendants did not satisfy the strict requirements to use the tip credit. Defendants maintained a policy and practice whereby they failed to provide Plaintiff and the Class Members, with the statutorily required notice regarding (1) the amount of the cash wage that is to be paid to the tipped employee, (2) the amount by which the wages of the tipped employee are increased on account of the tip credit, (3) that all tips received by the employee must be retained by the employee except for tips contributed to a valid tip pool, and (4) that the tip credit shall not apply to any employee who does not receive the notice.

31. In Ohio, the minimum wage rate and the maximum allowable tip credit amount changed every year. However, Defendant's likewise failed to inform Plaintiff and the Class Members of the amount of cash wage to be paid and the amount of the tip credit being taken each time these amounts changed.

32. Defendants also maintained a policy and practice whereby tipped employees were required to perform non-tip producing side work unrelated to the employees' tipped occupation. As a result, Plaintiff and the Class Members were engaged in a dual occupation while being compensated at the tip credit rate. While performing these non-tip generating duties, Plaintiff and the Class Members did not interact with customers and could not earn tips.

33. These duties include but are not limited to one or more of the following: mopping the floor, cleaning the kitchen, cleaning ledges, wiping windows, taking out trash, and washing appliances, amongst other activities, that were not related to her tipped duties.

34. Defendants also maintained a policy and practice whereby tipped employees were required to spend a substantial amount of time, in excess of 20 percent, performing non-tip producing side work related to the employees' tipped occupation.

35. Defendants further required Plaintiff and the Class Members to perform non-tip producing sidework related to their tipped occupation for more than thirty (30) continuous minutes.

36. Specifically, Defendants maintained a policy and practice whereby tipped employees, including Plaintiff, were required to spend a substantial amount of time performing non-tip producing side work, including, one or more of the following: cleaning tables, rolling silverware, refilling condiments, setting up tables, sweeping floors, and cleaning and stocking the serving line.

37. Further, Defendants required Plaintiff and the Class Members to perform non-tipped side work at the start and end of every shift. This included times before the restaurant opened and after the restaurant closed and customers had left. Indeed, when the restaurant was closed Plaintiff had no opportunity to earn tips because customers were not there. At times, they spent 30 minutes to two hours performing work before the restaurant was open and the same amount of time after the restaurant was closed performing non-tipped producing work.

38. However, Defendants did not pay their tipped employees the full minimum wage rate for this work. The duties that Defendants required Plaintiff and the Class Members to perform were duties that are customarily assigned to "back-of-the-house" employees in other restaurants, who typically receive at least the full minimum wage rate.

39. When the tipped employees performed these non-tipped duties, they usually did not interact with customers and did not have an opportunity to earn tips.

40. Indeed, Defendants did not have a policy prohibiting tipped employees from performing certain types, or excessive amounts, of non-tipped work.

41. Further, Defendants did not track or record the amount of time tipped employees spent performing non-tipped work, even though Defendants were capable of doing so. Defendants' timekeeping system was capable of tracking multiple job codes for different work assignments, but Defendants failed to track to the specific tasks for Plaintiff.

42. Defendants' timekeeping system was capable of tracking multiple job codes for different work assignments, but Defendants failed to track to the specific tasks for Plaintiff.

43. In the timekeeping system, Defendants can create different "clock in" codes that would allow tipped employees to record their time at the full minimum wage when performing non-tipped work.

44. However, Defendants did not allow the tipped employees to clock in at the full minimum wage rate when performing non-tipped work described in this Complaint.

45. Defendants further violated the FLSA and OMFWSA by enforcing a policy and practice of requiring tipped employees, including Plaintiff, to reimburse the restaurant from their tips when customers walked out without paying their bills, when the amount paid by a customer does not fully pay for a bill, or when there were errors in customer orders.

46. Because Defendants violated the requirements to claim the tip credit, Defendants lost the right to take a credit toward their minimum wage obligation to Plaintiff.

47. As such, Plaintiff was not compensated at the federally mandated minimum wage and Ohio minimum wage.

48. Defendants knew or should have known that their policies and practices violated the law, and Defendants have not made a good faith effort to comply with the FLSA or Ohio law. Rather, Defendants knowingly, willfully, and/or with reckless disregard of the law carried and continue to carry out their illegal pattern and practice regarding their tipped employees. Defendants' method of paying Plaintiff was not based on a good faith and reasonable belief that its conduct complied with the law.

49. Defendants illegally required Plaintiff and the Class Members to perform side work that was not contemporaneous with her duties involving direct service to customers or for a reasonable time immediately before or after performing such direct-service duties. That is because Defendants required Plaintiff and the Class Members to perform non-tipped work before the restaurant was open or after the restaurant was closed and when the restaurant was not open to customers. During this time, Defendants paid below the minimum wage rate.

50. Defendants maintained a uniform policy and practice of requiring tipped employees, including Plaintiff and the Class Members, to purchase non-slip shoes (or similar footwear) designated by Defendants as a condition of employment and then automatically deducting the cost of those shoes directly from the employees' wages via payroll deduction.

51. Defendants deducted $53.87 (or similar recurring amounts) from each pay period for "Shoes," with corresponding year-to-date balances that continued to accrue. These deductions were taken even when Plaintiff and the Class Members were already being paid at the reduced tip-credit rate of $2.13 per hour (FLSA) or the corresponding Ohio tip-credit rate.

52. The shoe deductions caused the net wages of Plaintiff and the Class Members to fall below the applicable federal and Ohio minimum-wage rates for all hours worked. Defendants never reimbursed these amounts, never treated the shoes as a business expense, and never paid the

full minimum wage (unencumbered by the tip credit) for any hours during which the deductions were taken.

53. Defendants' policy of requiring tipped employees to bear the cost of employer-mandated footwear, and then recouping that cost through payroll deductions while simultaneously claiming the tip credit, violates the FLSA's prohibition on deductions that cause wages to fall below the minimum wage. See 29 C.F.R. § 531.35; see also 29 U.S.C. § 203(m). The same conduct violates the Ohio Minimum Fair Wage Standards Act. O.R.C. § 4111.02.

54. Defendants' policy of requiring tipped employees to bear the cost of employer-mandated footwear resulted in Defendants' failure to allow Plaintiff and the Class Members to retain all tips that they earned thereby prohibiting Defendants from claiming any tip credit.

## COLLECTIVE ACTION ALLEGATIONS

55. Plaintiff brings this action as an FLSA collective action pursuant to 29 U.S.C. § 216(b) on behalf of all persons who were or are employed by Defendants as waitstaff, including waiters, servers, bartenders and those in substantially similar positions, for at least one week during the three-year period prior to the commencement of this action to the present.

56. Plaintiff has actual knowledge, through observations of and conversations with her co-workers that a class of similarly situated workers exists who have been subjected to the same policies of Defendants with respect to the payment of the minimum wage.

57. The FLSA Class Members are similarly situated to Plaintiff in that they share the same duties and were subject to the same violations of the FLSA.

58. Like Plaintiff, the FLSA Class Members were not given proper notice of the tip credit provisions and performed substantial work that was unrelated to their tip producing duties.

59. As a result of Defendants' wage policies, the FLSA Class Members' compensation dropped below the minimum wage in violation of the FLSA.

60. The names and addresses of the FLSA Class Members of the collective action are available from Defendants' records. To the extent required by law, notice will be provided to these individuals by first class mail, electronic mail, text message, or by the use of techniques and a form of notice similar to those customarily used in representative actions.

61. Although the exact amount of damages may vary among the FLSA Class Members in proportion to the number of hours they worked, damages for each individual can be easily calculated using a simple formula.

62. As such, the class of similarly situated Class Members is properly defined as follows:

> **All persons who were or are employed by Defendants as waitstaff, including waiters, servers, bartenders, and those in substantially similar positions, for at least one week during the three-year period prior to the commencement of this action until the date of entry of final judgment of this matter.**

## OHIO CLASS ALLEGATIONS

63. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the Ohio Class Members which is comprised of the following:

> **All persons who were or are employed by Defendants in Ohio as waitstaff, including waiters, servers, bartenders, and those in substantially similar positions, for at least one week during the three-year period prior to the commencement of this action until the date of final judgment of this matter.**

64. Numerosity. The number of members in the Ohio Class is believed to exceed forty. This volume makes bringing the claims of each individual member of the Ohio Class before this Court impracticable. Likewise, joining each individual member of the Ohio Class as a plaintiff in this action is impracticable. Furthermore, the identity of the members of the Ohio Class will be determined from Defendants' records, as will the compensation paid to each of them. As such, a

class action is a reasonable and practical means of resolving these claims. To require individual actions would prejudice the Ohio Class and Defendant.

65. Typicality. Plaintiff's claims are typical of the Ohio Class because like the members of the Ohio Class, Plaintiff was subject to Defendants' policies and practices and was compensated in the same manner as others in the Ohio Class. Plaintiff and the Ohio Class have been uncompensated and/or under-compensated as a result of Defendants' common policies and practices which failed to comply with Ohio law. As such, Plaintiff's claims are typical of the claims of the Ohio Class. Plaintiff and all members of the Ohio Class sustained damages arising out of and caused by Defendant's common course of conduct in violation of law as alleged herein.

66. Adequacy. Plaintiff is a representative party who will fairly and adequately protect the interests of the Ohio Class because it is in her interest to effectively prosecute the claims herein alleged in order to obtain the unpaid wages and penalties required under Ohio law. Plaintiff has retained counsel who are competent in both class actions and wage and hour litigation. Plaintiff does not have any interest which may be contrary to or in conflict with the claims of the Ohio Class she seeks to represent.

67. Commonality. Common issues of fact and law predominate over any individual questions in this matter. The common issues of fact include, but are not limited to:

a. Whether Defendants properly informed Plaintiff and the Ohio Class Members of the intent to claim the tip credit;

b. Whether more than 20% of the work performed by Plaintiff and the Ohio Class Members was non-tip generating work;

c. Whether Plaintiff and the Ohio Class Members performed non-tipped labor for more than thirty (30) continuous minutes.

68. The common issues of law include, but are not limited to;

a. Whether Defendants can claim the "tip credit";

b. Whether Defendants violated the Ohio Minimum Wage Fair Standards Act;

c. Whether Plaintiff and the Ohio Class are entitled to compensatory damages;

d. The proper measure of damages sustained by Plaintiff and the Ohio Class Members; and

e. Whether Defendants' actions were "willful."

69. Superiority. A class action is superior to other available means for the fair and efficient adjudication of this lawsuit. Even in the event any member of the Ohio Class could afford to pursue individual litigation against a company the size of Defendants, doing so would unduly burden the court system. Individual litigation would magnify the delay and expense to all parties and flood the court system with duplicative lawsuits. Prosecution of separate actions by individual members of the Ohio Class would create the risk of inconsistent or varying judicial results and establish incompatible standards of conduct for Defendants.

70. A class action, by contrast, presents far fewer management difficulties and affords the benefits of uniform adjudication of the claims, financial economy for the parties, and comprehensive supervision by a single court. By concentrating this litigation in one forum, judicial economy and parity among the claims of individual Ohio Class Members are promoted. Additionally, class treatment in this matter will provide for judicial consistency. Notice of the pendency and any resolution of this action can be provided to the Ohio Class by mail, electronic mail, text message, print, broadcast, internet and/or multimedia publication. The identity of members of the Ohio Class is readily identifiable from Defendants' records.

71. This type of case is well-suited for class action treatment because: (1) Defendants' practices, policies, and/or procedures were uniform; and (2) the burden is on Defendants to prove it properly compensated its employees including any potential exemptions that might apply. Ultimately, a class action is a superior form to resolve the Ohio claims detailed herein because of the common nucleus of operative facts centered on the continued failure of Defendants to pay Plaintiff and the Ohio Class Members per applicable Ohio laws.

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF THE OHIO MINIMUM FAIR WAGE STANDARD ACT
### FAILURE TO PAY THE MINIMUM WAGE

72. Plaintiff incorporates the preceding paragraphs by reference.

73. This count arises from Defendants' violation of the OMFWSA failure to pay minimum wages to Plaintiff and the Ohio Class Members.

74. During her employment with Defendants, Plaintiff and the Ohio Class Members were not exempt from the minimum wage provisions of the OMFWSA.

75. Defendants paid Plaintiff and the Ohio Class Members below the minimum wage rate in Ohio, in violation of O.R.C. § 4111.02.

76. Defendants' failure to pay the minimum wage to Plaintiff and the FLSA Class Members, in violation of the FLSA was willful and not based on a good faith belief that their conduct did not violate the FLSA. The foregoing conduct, as alleged, constitutes a willful violation within the meaning of the FLSA. 29 U.S.C. § 255(a).

### COUNT II
### VIOLATION OF THE FAIR LABOR STANDARDS
### FAILURE TO PAY THE MINIMUM WAGE

77. Plaintiff incorporates the preceding paragraphs by reference.

78. This count arises from Defendants' violation of the FLSA in connection with their failure to pay the minimum wages. *See* 29 U.S.C. § 206.

79. Plaintiff and the FLSA Class Members were paid an hourly rate less than the minimum wage while working for Defendants.

80. Plaintiff and the FLSA Class Members were not exempt from the minimum wage requirements of the FLSA.

81. Defendants' failure to comply with the minimum wage requirements of the FLSA, and, in particular, the tip credit requirements, resulted in Plaintiff and the FLSA Class Members being paid less than the Federal minimum wage rate. Defendants' violation of the FLSA was willful. Defendants had actual knowledge that such conduct was unlawful under the FLSA, having been sued previously for identical wage-and-hour violations in *Salmons v. JARS 1*.

82. Defendants' practice of failing to inform its employees of its intent to rely on the tip credit to meets its minimum wage obligations violates the FLSA.

83. Defendants' failure to pay the minimum wage to Plaintiff and the FLSA Class Members, in violation of the FLSA was willful and not based on a good faith belief that their conduct did not violate the FLSA. The foregoing conduct, as alleged, constitutes a willful violation within the meaning of the FLSA. 29 U.S.C. § 255(a).

**Count III**
**Violation of the Fair Labor Standards Act**
**Improper Deductions (29 U.S.C. § 206)**

84. Plaintiff incorporates the preceding paragraphs by reference.

85. At all relevant times, Defendants were employers within the meaning of the FLSA, 29 U.S.C. § 203(d), and Plaintiff and the FLSA Class Members were employees engaged in commerce or the production of goods for commerce.

86. Defendants' policy and practice of deducting the cost of required non-slip shoes from the wages of tipped employees who were being paid at the tip-credit rate caused those employees' net wages to fall below the federal minimum wage of $7.25 per hour for all hours worked.

87. Defendants' violations were willful. Defendants had actual knowledge that such deductions are unlawful under the FLSA, having been sued previously for identical wage-and-hour violations in *Salmons v. JARS 1*. Despite that prior litigation, Defendants continued the same unlawful payroll-deduction practices.

88. As a direct and proximate result of Defendants' willful violations, Plaintiff and the FLSA Class Members are entitled to recover the full amount of the unlawful shoe deductions, plus an equal amount as liquidated damages, together with reasonable attorneys' fees and costs. 29 U.S.C. §§ 216(b), 255(a).

**Count IV**
**Violation of the Ohio Minimum Fair Wage Standards Act**
**Improper Deductions (O.R.C. § 4111.02)**

89. Plaintiff incorporates the preceding paragraphs by reference.

90. At all relevant times, Defendants were employers and Plaintiff and the Ohio Class Members were employees within the meaning of the OMFWSA. O.R.C. § 4111.03(D).

91. Defendants' policy and practice of deducting the cost of required non-slip shoes from the wages of tipped employees paid at the Ohio tip-credit rate caused those employees' net wages to fall below the Ohio minimum wage for all hours worked.

92. As a direct and proximate result of Defendants' violations, Plaintiff and the Ohio Class Members are entitled to recover the full amount of the unlawful shoe deductions, together with treble damages, interest, and reasonable attorneys' fees and costs as provided by O.R.C. § 4111.10.

**Count V**
**Civil Action for Damages Resulting from Criminal Act**
**O.R.C. § 2307.60**

93. Plaintiff incorporates the preceding paragraphs by reference.

94. Defendants' minimum wage violations, including its policy and practice of automatically deducting the cost of required non-slip shoes from the wages of Plaintiff and the Class Members, while simultaneously claiming the tip credit and paying below the minimum wage, constitute criminal acts under Ohio law.

95. Pursuant to Ohio Rev. Code § 2307.60, any person injured in person or property by a criminal act may bring a civil action and recover full damages (including punitive damages), costs, and attorney fees. Ohio courts have expressly recognized that willful FLSA violations qualify as predicate criminal acts supporting a § 2307.60 claim. *See Oglesby v. FedEx Ground Package System, Inc.*, No. 3:20-cv-00346 (S.D. Ohio) (allowing § 2307.60 claim predicated on willful FLSA violations under 29 U.S.C. § 216(a)).

96. As a direct and proximate result of Defendants' criminal acts, Plaintiff and the Class Members have suffered damages in the amount of all unlawful shoe deductions taken, plus treble damages, punitive damages, attorneys' fees, and costs recoverable under O.R.C. § 2307.60.

**WAGE DAMAGES SOUGHT**

97. Plaintiff and the FLSA Class Members are entitled to receive the difference between the Federal minimum wage of $7.25 an hour and the tip credit adjusted minimum wage for each hour she worked.

98. Plaintiff and the Ohio Class Members are entitled to receive the difference between the Ohio minimum wage rate and the tip credit adjusted minimum wage for each hour they worked.

99. Plaintiff and the Class Members are entitled to liquidated damages under the FLSA and treble damages under Ohio Law.

100. Plaintiff and the Class Members are also entitled to recover her attorney's fees and costs, as required by the FLSA and Ohio law.

**JURY DEMAND**

Pursuant to her rights under the Constitution of the United States, U.S. CONST. amend VII, and FED R. CIV. P. 38(a), Plaintiff hereby demands trial by jury.

**PRAYER FOR RELIEF**

For these reasons, Plaintiff respectfully requests that judgment be entered in her favor awarding her and the Class Members:

a. Minimum wage compensation unadulterated by the tip credit;

b. Liquidated damages;

c. Treble damages;

d. All misappropriated funds including all tips, expenses, and wages wrongfully withheld;

e. An order requiring Defendants to correct their pay practices going forward;

f. Reasonable attorney's fees, costs, and expenses of this action;

g. Pre and post judgment interest; and

h. Such other and further relief to which Plaintiff and the Class Members may be entitled, both in law and in equity.

Respectfully submitted,

/s/ Michael L. Fradin
Michael L. Fradin 0091739
Fradin Law, LLC
8401 Crawford Avenue, Suite 104
Skokie, Illinois 60076
Phone: 847-986-5889
Facsimile: 847-673-1228

mike@fradinlaw.com

By: */s/ James L. Simon*
James L. Simon
SIMON LAW CO.
11 ½ N. Franklin Street
Chagrin Falls, Ohio 44022
Telephone: (216) 816-8696
Email: james@simonsayspay.com

**JURY DEMAND**

Plaintiff demands a trial by jury on all eligible claims and issues.

/s/ Michael L. Fradin
One of the Attorneys for Plaintiff